# Robert Chalfont, plaintiff in error, *vs.* The United States, defendant in error.

## *Error to Desmoines.*

The act making it indictable to cut timber off the school lands, is not contrary to Organic Law.

The legislature has power to punish all injuries to real estate, as misdemeanors, even though the lands belong to the United States.

GRIMES & STARR, for plaintiff in error.

H. T. RIED, district prosecutor, for defendant in error.

The points involved, are sufficiently stated in the opinion of the court.

PER CURIAM, MASON, CHIEF JUSTICE.—The plaintiff in error, was indicted under a statute of this territory, for cutting and carrying away timber, from a certain sixteenth or school section of land, in the county of Desmoines. To this indictment he pleaded in abatement, that the said sixteenth section was public lands of the United States, and not school lands or the property of the territory of Iowa.

This plea was demurred to, and the demurrer sustained by the court, which is the substance of all the errors assigned in the case.

The only ground for reversing this judgment is, the alleged invalidity of the statute. It is said to be a violation of the organic act, and consequently void. But does it, as alleged, in any manner interfere with the primary disposal of the soil? It is a penal statute, punishing as a misdemeanor, any one who shall commit certain trespasses upon a particular class of the public lands of the U. States. Our laws render larceny criminal, but whoever supposed those laws in any manner interfered with the disposal of the property, which is thus made the subject of larceny? They leave the entire control of the property in the owner, and merely throw around him an additional safeguard, the undisturbed enjoyment of it.

The laws of some of the States of the Union, render the felonious cutting down and carrying away of timber, exceeding in value a certain amount, larceny. Does that law in any manner encroach upon the rights of property of the respective owners of real estate? would it not be so if enacted in this territory? Would it be a userpation of power in our legislature, to extend this protection, as well to the timber growing upon the public lands of the United States, as to that owned by private individuals? If such a law would be valid, when applied to all lands in the territory, would it not be equally so when limited to a particular class of those lands? And if a law of that kind would be within the legitimate province of legislative power, why is the law in question *without* it?

The answers to all these questions seem to us evident, to establish the right of our legislature to punish trespasses upon the sixteenth sections in the manner pointed out by the statute. As a general rule, the legislatures are the sole judges as to what act ought to be prohibited, and to their wisdom is entrusted the power to punish or otherwise prevent them. Legal restraints may be carried so far as to generate into

tyranny, and there is no doubt but they may finally become so wanton, so outrageous, so repugnant to the spirit of that liberty which is our birthright, as to cease to be obligatory; but the line of demarcation which limits legislative power in this direction, need not be drawn in the present case. No right has been restrained, but there is merely provided an additional preventive of a wrong.

Legislation on this subject has not been wanton or needless, but has been guided by a strict regard for the general welfare. True, these may not be strictly "school lands." The title is still in the general government, and they may still be diverted to a different purpose. But there is a moral certainty that at the proper time, they will be granted to the State for the support of schools. With this express object they have been reserved from sale, and have been regarded by Congress as devoted to that object, and without a flagrant breach of good faith to our citizens, their destination cannot be changed. Under these circumstances, the public—that is to say, all the inhabitants of this territory—have a strong interest in the preservation of those lands from spoliation. The legislature, as the organ of the public will, and the guardian of the public interest, would have been wanting in its duty, if it had suffered this magnificent patrimony to become wasted and rendered valueless. To prevent this, is clearly a "rightful subject of legislation."

The right to pass this law, is compared to the right, or rather incapacity of the heir, to maintain the action of trespass before the death of his ancestor. And suppose the legislature was to confer on him that right, could he not then maintain the action? The counsel for the plaintiff in error, seems to treat this case as though under the general law, the territory of Iowa had brought an action of trespass against their client, for an injury done to the property of another. They test the question by the rules of court, rather than by the great land marks of legislation: forgetting that the legislature is all but omnipotent over the rules of legal proceedings, as well as over many other subjects. How many acts, in themselves innocent, are prohibited and made misdemeanors by statute? Unless in extraordinary cases, no one ever questions the power of the legislature in such cases. But where prohibitions and reasonable penalties are privided for acts *morally wrong*, the validity of such laws must surely be evident. The present case is of that class.

It is contended that the statute prohibiting trespasses upon school lands, interferes with the primary disposal of the soil, because its fifth section exempts from its penalties those living upon the school

sections, and who shall only cut the timber necessary for fencing, building, fire wood, &c., but we cannot reach such a conclusion from such premises. The law does not decide who may, or who may not occupy any portion of the public lands. It meddles not with the question of occupancy, any more than it does with that of higher titles. It treats every man's tenancy as though it were legal. The *bona fide* tenant is permitted to do all that is necessary to keep the premises in repair, and keep up his occupancy, but if he commits waste, or if any other person is guilty of trespass, he is made liable. Upon the presumption that every occupant is legally in possession of the land he occupies, the law does nothing more in relation to those lands than convert a civil liability into a misdemeanor. Those are exempted from the penalty, who would be justified civilly. It would be clearly in the power of the legislature to abolish all civil remedies, and to transform all cases which give rise to actions *ex delicto* into crimes and misdemeanors; and all this without interfering with the rights or primary disposal of the property. It is also contended, that inasmuch as Congress, by the act of 1807, have legislated in relation to trespasses upon all public lands, the present law is invalid. But even supposing that act to be in full force, in relation to the school lands, it does not reach a case of this description. It is aimed at the *settlers* upon the public lands, and authorizes their removal; but provides no remedy for the destruction of timber by persons having legal residences elsewhere, than upon the lands wasted. We conclude therefore, that it would be competent for the legislature to punish all willful injuries to real estate, as misdemeanors; that this power extends as well to lands owned by the United States, as to that belonging to individuals. That it may be lawfully limited to a particular class of trespassers, and that the condition of the sixteenth sections of land in this territory, is such as morally to justify the action of the legislature on this subject. The judgment below will therefore be affirmed.